UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CURTISHA HOLDEN,

    Plaintiff,

    v.

TARGET CORPORATION and Does 1-25,

    Defendants.

Case No. 16-cv-02217-JST

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: ECF No. 3

Before the court is Defendant Target Corporation's Motion to Dismiss. ECF No 3. The Court will grant the motion as to the Plaintiff's claim for negligent infliction of emotional distress with prejudice; grant the motion as to Plaintiff's claims for intentional infliction of emotional distress and defamation with leave to amend; and deny the motion as to all remaining claims.

**I.     BACKGROUND**

    **A.     Factual History**

Plaintiff Curtisha Holden, who is appearing pro se, claims that she was injured by Defendant Target's loss prevention employee after she was caught shoplifting at a Target store in Emeryville, California. Her complaint includes the following factual allegations:

> I was caught shoplifting on [blank space] 2016 and I was escorted to the back. They asked me to go into the room without my sons (loss prevention). I told them that I can't leave my sons with someone that I don't know and the loss prevention male who was working that day grabbed me by my arm and put me in a armhold [sic] bar. He pushed me in the room and the other guard was calling me a bitch and saying CPS was going to take my children. The loss prevention officer who had my arm pulled my arm all the way up my back and threatened to break my arm and called me a bitch in front of my son. I was screaming for help. Other employees near the room [were] laughing. I was physically hurt and I am hurt still today. This incident [occurred] in [E]meryville, CA.

ECF No. 1-1, Ex. A at 6.

### B. Procedural History

Holden filed a civil action in Alameda County Superior Court against Defendants Target Corporation and John Does 1-25. ECF No. 1-1, Ex. A at 2. Her complaint alleges the following causes of action: (1) negligence, (2) negligent infliction of emotional distress, (3) intentional tort, (4) intentional infliction of emotional distress, and (5) defamation. ECF No. 1-1, Ex. A at 5-6. Holden alleges injuries in the form of "hospital and medical expenses," "general damage," "emotional distress," "ongoing pain in right arm," "restricted movement in right arm," and a "mental change in [her] sons [sic] behavior." Id. Holden seeks compensatory and punitive damages. Id.

## II. JURISDICTION

This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. ECF Nos. 1, 12.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In analyzing a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). The Court also liberally construes the pleadings of pro se litigants. See Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662,

1   678 (2009) (citation and internal quotation marks omitted).  In the Ninth Circuit, "[i]f there are
2   two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both
3   of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).
4   Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is
5   so convincing that plaintiff's explanation is *im*plausible." Starr v. Baca, 652 F.3d 1202, 1216 (9th
6   Cir.2011) (emphasis in original).

## IV.  DISCUSSION

Target moves the Court to dismiss all claims against it for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 3.  The Court addresses each of Holden's claims in turn.

### A.  Claim One: Negligence

The factual allegations in Holden's complaint sufficiently state a claim for negligence. To state a claim for negligence under California law, a plaintiff must plead sufficient facts to show "(1) duty; (2) breach; (3) causation; and (4) damages." Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003).  Holden's complaint alleges sufficient factual information to satisfy all four elements.

First, Target's loss prevention officer owed Holden a duty of due care. "Under general negligence principles . . . a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others." Lugtu v. California Highway Patrol, 26 Cal. 4th 703, 716 (2001).  Second, Holden's allegations suggest that Target's loss prevention officer breached that duty when he put her in an "armhold bar," "pushed [her]," "pulled [her] arm all the way up [her] back and threatened to break [her] arm." ECF No. 1-1, Ex. A at 5-6. This conduct created an unreasonable risk of injury to Holden.  Finally, Holden alleges that this breach of duty harmed her. Specifically, she alleges that she "was physically hurt and [is] hurt still today," is suffering "on-going pain . . . [and] restricted movement in [her] right arm," and has suffered "emotional distress." Id.

Target argues that it did not breach its duty to Holden because its employee was simply using the reasonable amount of nondeadly force necessary to move the Plaintiff to a separate room

in the store after she was caught shoplifting. ECF No. 3 at 5. The "Shopkeeper's Privilege" allows a merchant to "use a reasonable amount of nondeadly force to protect himself or herself and to prevent escape of the person detained" if the merchant has probable cause to believe that the person has shoplifted. Cal. Penal Code § 490.5(f). Based on the "Shopkeeper's Privilege," Target argues that this force was reasonable in the circumstances because Holden refused to comply with the Target employee's request to move to a separate room. ECF No. 3 at 5.

There are two responses to this argument. First, the Shopkeeper's Privilege is an affirmative defense, and an affirmative defense is not a proper ground for dismissal on a 12(b)(6) motion. See Giannini v. Am. Home Mortgage Servicing, Inc., No. C11-04489 TEH, 2012 WL 298254, at *5 (N.D. Cal. Feb. 1, 2012) ("[I]t would be inappropriate for the Court to base a dismissal under Rule 12(b)(6) on an affirmative defense."); Fed. R. Civ. P. 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."). For that reason alone, the argument fails.

Second, the argument requires the Court to consider material outside the four corners of the complaint – specifically, a surveillance video that Target says shows Holden kicking the door to the loss prevention detention room from the room's interior. Id. at 5, n. 2. "[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), [however], review is limited to the complaint." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal citations and quotation marks omitted). And nothing in Holden's *complaint*, which the Court accepts as true and construes in the light most favorable to the plaintiff, indicates that she tried to harm a Target employee or escape such that any force was necessary to detain her. Rather, the Plaintiff's complaint suggests that she was "escorted to the back" and then simply told Target personnel that she could not leave her sons with someone she did not know. See generally ECF No. 1-1, Ex. A at 6. These allegations do not state a defense under the Shopkeeper's Privilege.

Because Holden's complaint sufficiently alleges that Target breached its duty of due care and caused Holden harm, the Court denies Target's Motion to Dismiss Holden's negligence claim.

### B.     Claim Two:  Negligent Infliction of Emotional Distress

In California, "there is no independent tort of negligent infliction of emotional distress."

4

1  Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 984 (1993). "The tort is negligence." Id.
2  Accordingly, Holden's negligent infliction of emotional distress claim is dismissed with prejudice
3  as duplicative of her negligence claim.

### C. Claim Three: Intentional Tort

"The elements of a battery claim in California are that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the Plaintiffs' person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007). The factual allegations in Holden's complaint satisfy all three elements of a battery claim. First, Holden alleges that "[t]he loss prevention officer . . . pulled [her] arm all the way up [her] back and threatened to break [her] arm." ECF No. 1-1 at 5-6. This suggests that Target personnel intentionally acted so as to result in a harmful or offensive contact to Holden's person. In response, Target argues that its loss prevention officer did not intend to harm Holden but rather was just trying to move her into a separate room. ECF No. 3 at 6. At this stage of the case, the Court is required to construe the pleadings in the light most favorable to the plaintiff, and the Court reasonably infers based on Holden's factual allegations that the loss prevention officer's physical contact demonstrates an intent to harm. ECF No. 1-1, Ex. A at 6. Second, Holden alleged that she "was screaming for help," indicating her lack of consent to the contact. Id. Finally, Holden alleged that she is "hurt still today," suffering "pain ... [and] restricted movement in [her] right arm"). Id. In sum, the factual allegations in Holden's complaint state a claim for battery.

Holden's complaint also states a claim for assault. To properly state a claim for assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch her in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. Tekle, 511 F.3d at 855. Again, the factual allegations in Holden's complaint satisfy all of these elements. First, Target's loss prevention officer threatened to touch Holden in a harmful manner by threatening to "break [her] arm." ECF No. 1-1, Ex. A at 6. Second, Holden's allegations

demonstrate that it reasonably appeared to Holden that the employee was about to carry out this threat ("[t]he loss prevention officer . . . pulled my arm all the way up my back . . . I was screaming for help."). Id. Third, there is no indication that Holden consented to the loss prevention officer's conduct. See generally id. To the contrary, the fact that Holden was "screaming for help" suggests that she did not consent to the conduct. Id. Finally, the loss prevention officer's conduct proximately caused harm to Holden: She alleges that she "was physically hurt and [is] hurt still today" and is suffering "on-going pain . . . [and] restricted movement in [her] right arm"). Id.

Because Holden adequately states claims for both battery and assault, the Court denies Target's Motion to Dismiss her intentional tort claim.

### D.     Claim Four:  Intentional Infliction of Emotional Distress

Under California law, a cause of action for intentional infliction of emotional distress exists when: (1) there is extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffers severe or extreme emotional distress; and (3) the defendant's outrageous conduct actually and proximately caused the plaintiff's emotional distress. Hughes v. Pair, 46 Cal. 4th 1035, 1050-51 (2009) (citations and internal quotation marks omitted). Although Holden sufficiently alleges that Target engaged in extreme and outrageous conduct that caused her harm, her complaint fails to state a claim for intentional infliction of emotional distress because she fails to sufficiently allege the nature and extent of her emotional distress.

First, Holden's complaint sufficiently alleges outrageous and extreme conduct by Target with the intent to cause emotional distress. "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." See id. (internal citations and quotation marks omitted). To determine whether the defendant's conduct was outrageous, California courts also consider whether the defendant abused a position of power to injure the plaintiff or knew that the plaintiff had a special susceptibility to emotional distress under the circumstances. See Kiseskey v. Carpenters' Trust for So. California, 144 Cal. App. 3d 222, 230, 192 Cal. Rptr. 492, 496 (Ct. App. 1983); Cochran v. Cochran, 65 Cal. App. 4th 488, 494

6

(1998). Here, Holden alleges that a Target employee abused his position of power when he "grabbed" her, "pushed" her, "pulled [her] arm all the way up [her] back," "threatened to break [her] arm," declared that "CPS was going to take [her] children," and called her a "bitch" in front of her son. ECF No. 1-1, Ex. A at 6. Holden further alleges that Target employees laughed as she "was physically hurt" and "screaming for help." Id. Her complaint also implies that Target employees attempted to separate her from her children knowing that this would cause her emotional distress ("I told them that I can't leave my sons with someone that I don't know"). Id.

Target argues that its alleged conduct, including the employee's statement that CPS would take away Holden's children and calling Holden a "bitch" in front of her son, amounted to no more than a non-actionable insult or threat. ECF No. 3 at 7. It is true that "[l]iability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Hughes, 46 Cal. 4th at 1051. And "mere insulting language or threats, *without more*, does not constitute outrageous conduct," Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1613 (2012) (emphasis added). However, courts have held that there is extreme and outrageous conduct where the defendant insults the plaintiff, threatens the plaintiff with physical violence, and threatens the well-being of the plaintiff's family members. See, e.g., Kiseskey, 144 Cal. App. 3d at 230 (holding that the plaintiff sufficiently alleged outrageous conduct where the defendant called the plaintiff a "no good son of a bitch," threatened to put the plaintiff in the hospital, and threatened the well-being of the plaintiff's wife and children); Campbell v. Feld Entm't Inc., No. 12-CV-4233-LHK, 2014 WL 1366581, at *12 (N.D. Cal. Apr. 7, 2014) (finding that the defendant's "physically threatening behavior" constituted extreme and outrageous conduct). Here, the Target employees similarly insulted Holden, threatened her with physical violence ("threatened to break [her] arm"), and threatened the well-being of her family members ("the other guard was . . . saying that CPS was going to take my children"). ECF No. 1-1, Ex. A at 6. Taken together, these alleged actions constitute extreme and outrageous conduct for the purposes of a claim for intentional infliction of emotional distress.

Ultimately, though, Holden's complaint does not provide enough factual information to determine whether she suffered "severe or extreme emotional distress" as required under

1   California law. Hughes, 46 Cal. 4th at 1050-51. With respect to this requirement, California
2   courts have set a "high bar": The plaintiff must show "emotional distress of such substantial
3   quality or enduring quality that no reasonable [person] in civilized society should be expected to
4   endure it." Hughes, 46 Cal. 4th at 1050-51 (citation omitted). And the "mere allegation that [a
5   plaintiff] suffered severe emotional distress, without facts indicating the nature or extent of any
6   mental suffering incurred as a result of the defendant's alleged outrageous conduct, fail[s] to state
7   a cause of action for intentional infliction of emotional distress." Pitman v. City of Oakland, 197
8   Cal. App. 3d 1037, 1047 (Ct. App. 1988). Accordingly, courts dismiss claims for intentional
9   infliction of emotional distress where the plaintiff fails to plead facts demonstrating the nature and
10  extent of the emotional distress suffered. See, e.g., Angie M. v. Superior Court, 37 Cal. App. 4th
11  1217, 1227 (Ct. App. 1995) (holding that the lower court properly dismissed the plaintiff's claim
12  for intentional infliction of emotional distress because "[the plaintiff] pleaded no facts
13  demonstrating the nature, extent or duration of her alleged emotional distress"); Schultz v.
14  Stericylce, Inc., No. CV F 13-1244 LJO MJS, 2013 WL 4776517, at *8 (E.D. Cal. Sept. 4, 2013)
15  (holding that the complaint lacked facts to support severe emotional distress where the plaintiff's
16  complaint "[made] sweeping references to pain and suffering, extreme and severe mental anguish,
17  and emotional distress with no facts to support such symptoms or conditions") (internal quotation
18  marks omitted)). Here, Holden merely asserts that she suffers "emotional distress" and a "mental
19  change in sons [sic] behavior." ECF No. 1-1, Ex. A at 5. She has therefore not alleged sufficient
20  facts to "indicat[e] the nature or extent of any mental suffering incurred" as a result of the Target
21  employees' extreme and outrageous conduct. Pitman, 197 Cal. App. 3d at 1047.
22      Accordingly, the Court grants Defendant's Motion to Dismiss Holden's intentional
23  infliction of emotional distress claim with leave to amend. Holden should add to any amended
24  complaint additional facts indicating the nature and extent of her emotional distress.
25      **E.    Claim Five: Defamation**
26      Holden's complaint fails to properly allege a claim for defamation. Under California law,
27  "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4)
28  unprivileged, and (5) has a natural tendency to injure or causes special damage." Sanders v.

8

1   Walsh, 219 Cal. App. 4th 855, 862 (2013) (citations and internal quotation marks omitted).

2   Because Holden alleges defamatory oral utterances, her complaint attempts to allege a claim of

3   slander.  See Cal. Civil Code §§ 45, 46.  Under California law, slander is defined as:

> [A] false and unprivileged publication, orally uttered . . . which:
> (1) Charges any person with crime, or with having been indicted, convicted, or punished for crime;
> (2) Imputes in him the present existence of an infectious, contagious, or loathsome disease;
> (3) Tends directly to injure him in respect to his office, profession, trade or business . . . ;
> (4) Imputes to him impotence or a want of chastity; or
> (5) Which, by natural consequence, causes actual damage.

Cal. Civil Code § 46.

In her complaint, Holden alleges that Target employees made three potentially slanderous utterances: (1) The guard called Holden a "bitch"; (2) The guard told Holden that "CPS was going to take [her] children"; and (3) Target's loss prevention officer called Holden a "bitch."  ECF No. 1-1, Ex. A at 6.  The first and third utterances calling Holden a "bitch" cannot state a defamation claim because these statements constitute vague, rhetorical hyperbole and do not convey a provably false factual assertion.  To properly state a claim for defamation the plaintiff must allege a statement that is capable of being proven true or false.  See Manufactured Home Communities, Inc. v. Cty. of San Diego, 544 F.3d 959, 966 (9th Cir. 2008) ("It is an essential element of defamation that the publication be of a false statement of *fact* rather than opinion.") (quoting Eisenberg v. Alameda Newspapers, Inc., 74 Cal.App.4th 1359 (Ct.App.1999); Savage v. Pac. Gas & Elec. Co., 21 Cal. App. 4th 434, 444-45 (1993) (explaining that California Civil Code § 46 refers to a "false … publication" and this statutory definition can only be meaningfully applied to statements that are capable of being proven true or false).  Thus, "satirical, hyperbolic, imaginative, or figurative statements are protected because the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact."  Franklin v. Dynamic Details, Inc., 116 Cal. App. 4th 375, 385 (2004) (internal citations and quotation marks omitted); see also, e.g., Seelig v. Infinity Broad. Corp., 97 Cal. App. 4th 798, 811 (2002) (holding that "[t]he phrase big skank is not actionable because it is too vague to be capable of being proven true or false" and "the term skank constitutes rhetorical hyperbole which no

United States District Court
Northern District of California

listener could reasonably have interpreted to be a statement of actual fact").

"The critical determination of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court … and therefore suitable for resolution by demurrer." See Ferlauto v. Hamsher, 74 Cal. App. 4th 1394, 1401 (1999).  Here, the alleged utterances calling Holden a "bitch"—like calling someone a "big skank"—cannot form the basis of a defamation claim because they constitute rhetorical hyperbole that is devoid of factual content.

The second utterance, in which the guard told Holden that CPS was going to take away her children, does not qualify as slander per se under California law, and Holden's complaint fails to allege the requisite special damages to state a claim for slander per quod.  "A slander that falls within the first four subdivisions of Civil Code section 46 is slander per se and require[s] no proof of actual damages."  Regalia v. Nethercutt Collection, 172 Cal. App. 4th 361, 367 (2009).  By comparison, "[a] slander that does not fit into those four subdivisions is slander per quod, and special damages are required for there to be any recovery for that slander."  Id.  In turn, Civil Code § 48a defines "special damages" as "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other."  Cal. Civ. Code § 48a(b).  Here, the utterance that "CPS was going to take [her] children" is not slander per se because it does not (1) charge Holden with a crime, (2) impute in Holden the existence of a disease, (3) injure Holden's business, or (4) impute to Holden a want of chastity.  See Cal. Civil Code § 46(1)-(4).  As a result, Holden must allege special damages to state a claim for slander per quod.  However, Holden's complaint does not allege that this utterance damaged her property, business, trade, profession, or occupation.  See generally ECF No. 1-1, Ex. A at 6.  Nor does she allege that she has expended money as a result of the alleged slander.  Id.  Holden merely asserts that she suffers "general damage," "emotional distress" and a "mental change in sons [sic] behavior." Id. at 5-6.  These allegations, standing alone, are also too sparse to demonstrate that the utterance "by natural consequence, caused actual damage."  Cal. Civil Code § 46(5).  To state a claim, Holden must make sufficient factual allegations to show, not just state, that Target is plausibly liable for defamation.  See Iqbal, 556 U.S. at 678 ("A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

In sum, Holden does not sufficiently state a claim for defamation. Therefore, Target's Motion to Dismiss Holden's defamation claim is granted with leave to amend. Holden should add to any amended complaint additional facts demonstrating that the allegedly defamatory statements either resulted in special damages or "by natural consequence caused actual damage." Cal. Civil Code § 46(5).

### F.    Leave to Amend

When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995). Target argues that "allowing Plaintiff to amend her complaint would be futile" and that the Court should therefore deny Holden leave to amend. ECF No. 3 at 9. The Court rejects this argument, especially in light of Holden's pro se status.

The Court encourages Holden to seek the assistance of the Legal Help Center. The Legal Help Center is located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, and in Oakland at 1301 Clay Street, 4th Floor, Room 470S, Oakland, California. Assistance is provided by appointment only. A litigant may schedule an appointment by signing up in the appointment book located on the table outside the door of the Center or by calling the Legal Help Center appointment line at (415) 782-8982. Holden may also wish to consult the Northern District of California manual, Representing Yourself in Federal Court: A Handbook for Pro Se Litigants, a copy of which may be downloaded at http://www.cand.uscourts.gov/prosehandbook or obtained free of charge from the Clerk's office.

## CONCLUSION

For the foregoing reasons, the Court grants the Motion to Dismiss with prejudice as to Holden's duplicative claim for negligent infliction of emotional distress; grants the Motion to Dismiss with leave to amend as to Holden's claims for intentional infliction of emotional distress and defamation; and denies the Motion to Dismiss as to Holden's claims for negligence and intentional tort. Plaintiff may file an amended complaint within 21 days of the date of this Order

11

1 to plead additional facts not alleged in the original complaint. Failure to amend by this deadline
2 will result in dismissal of those claims without prejudice.
3     The Case Management Conference scheduled for July 27, 2016 is continued to September
4 29, 2016 at 2:00 p.m.  Updated Case Management Statements must be filed by September 20,
5 2016.  Defendant is cautioned that any future Case Management Statement must contain a
6 proposed schedule.
7     IT IS SO ORDERED.
8 Dated:  July 21, 2016

                                JON S. TIGAR
                             United States District Judge